FIRST COLONY LIFE INSURANCE COMPANY, APPELLEE, V.
MICHAEL GERDES AND LINDA GERDES, APPELLANTS,
AND LAURA ALBERS (SMITH) ET AL., APPELLEES.
676 N.W.2d 58

Filed March 19, 2004. No. S-02-1385.

Frederick S. Cassman, of Abrahams, Kaslow & Cassman, L.L.P., for appellants.

Christian R. Blunk, of Berkshire & Blunk, for appellees Laura Albers (Smith), Julie Smith, and Brian Behrens.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

This is an interpleader action brought by First Colony Life Insurance Company (First Colony) to determine the rightful beneficiary of a life insurance policy issued to Thomas A. Smith (Smith) in the amount of $100,000. The two groups of defendants that First Colony interpleaded were Smith's daughters from his first marriage and Smith's stepchildren from his second marriage.

## FACTUAL BACKGROUND

Smith's first marriage produced two children, Laura Albers and Julie Smith. After his divorce from his first wife, Smith married

Rita Gerdes, who had two children from a previous marriage, Michael Gerdes and Linda Gerdes (the Gerdeses).

On September 3, 1996, First Colony issued a life insurance policy to Smith in which Smith named Rita as the beneficiary. Rita died shortly thereafter. On May 6, 1997, Smith changed the beneficiary on the policy to include both of his daughters as well as the Gerdeses.

On February 10, 1998, Smith, who was in poor health from diabetes, executed a document entitled "Durable General Power of Attorney," naming Bryan Behrens as his "attorney-in-fact and as [his] agent." On the same day, Smith executed a revocable trust, naming himself as trustee and Behrens as first alternate trustee. Behrens is also named as "executor" of Smith's will, but is not a devisee, nor is he a beneficiary of the revocable trust.

Behrens is a financial planner who handled Smith's financial affairs for approximately 10 years. It was at Behrens' recommendation that Smith retained an attorney to prepare the durable general power of attorney and revocable trust.

Behrens testified that he was present at the time Smith executed the durable general power of attorney and trust. Behrens further testified that on the same day, while in the office of Smith's attorney, a change of beneficiary form was completed and signed by Smith changing the beneficiary designation on the First Colony policy from his daughters and the Gerdeses to the trust. According to Behrens, the change of beneficiary form was sent that same day to First Colony's local agent. A photocopy of the change of beneficiary form, however, was not made.

Article 1, paragraph 1.3, of the power of attorney provided that the document "shall not be effective until I [Smith] am disabled," which was defined as being unable to "handle my [Smith's] own financial affairs." Paragraph 1.3 further provided that "[m]y disability may be proved by a report of two (2) physicians, psychiatrists or psychologists who have examined me" or "by any other method of proof permitted by law." Article 2, paragraphs 2.2 and 2.13, of the document provided:

> 2.2 Full Power of Attorney: I give to my agent the full power to act or to omit to act regarding my estate or my person, I intend to grant to my agent a Durable General Power of Attorney to act for me and not to grant only a limited or

special power. My agent can act for me with regard to my property or person to the extent that I could act if I were personally present.

. . . .

2.13 Signing Documents: My agent shall have full power to sign, acknowledge or deliver any contracts, deeds or other documents as may be necessary or advisable to carry out the purposes of this Power of Attorney.

After these documents were executed, Smith went to California on vacation. According to Behrens, while in California, Smith became ill after a dialysis treatment and was never able to return to Nebraska "because he [Smith] could not get in a car or get on a plane because he was hooked up to a dialysis machine." Behrens testified that he spoke to Smith on the telephone in late February 2001 and that Smith instructed him to make sure the life insurance policy and his other assets were put into the trust. Behrens stated that although Smith was coherent during the telephone conversation, Smith informed Behrens that "he [Smith] couldn't write his own name" and that "he [Smith] didn't think he was going to live 'til the next day."

Behrens went on to testify that after speaking with Smith on the telephone, he called First Colony and was informed the trust was not the named beneficiary despite the change of beneficiary form Behrens testified Smith signed and mailed on February 10, 1998, the same day that the power of attorney and trust were executed. Thereafter, on February 25, 2001, Behrens executed a change of beneficiary form with First Colony pursuant to the power of attorney, naming the trust as sole beneficiary. Behrens explained that because Smith did not believe he was going to live, Behrens did not forward the change of beneficiary form to Smith for his signature. Behrens acknowledged that he knew the change of beneficiary would eliminate any interest the Gerdeses had in the First Colony policy, because the Gerdeses were not beneficiaries under the trust. Smith died on March 5, 2001.

In an affidavit, Behrens averred that he had not received compensation from the trust and did not intend to charge trustee fees. He further averred that he had no interest in the trust other than to act in accordance with his duties as trustee.

## PROCEDURAL BACKGROUND

First Colony filed this interpleader action after Smith died, naming the Gerdeses, Smith's daughters, and Behrens as defendants. The Gerdeses, in their answer, alleged that the net effect of Behrens' changing the beneficiary was to convey a gift to Smith's daughters amounting to 50 percent of the First Colony policy proceeds and that the power of attorney did not expressly authorize Behrens to make a "gratuitous transfer." The Gerdeses' answer does not allege that Behrens' conduct was fraudulent. Smith's daughters and Behrens alleged in their answers that Behrens was directed by Smith to change the beneficiary and that, therefore, Behrens' actions were proper.

The Gerdeses filed a motion for summary judgment contending the change of the beneficiary designation was invalid as a matter of law. Smith's daughters and Behrens filed a joint motion for summary judgment, contending the trust was entitled to the life insurance proceeds.

After a hearing on the motions for summary judgment, the district court found that the insurance policy reserved to Smith the right to change the beneficiary and that the power of attorney gave Behrens the authority to act. The court further found that Behrens' testimony and affidavit, which were both uncontroverted and received without objection, established that (1) Smith was incapable of acting on his own when the beneficiary change was made on February 25, 2001; (2) Behrens had no personal interest in the trust or life insurance policy, had not profited from making the change in beneficiary, and had not received compensation for his actions as attorney in fact; and (3) Behrens' telephone conversation with Smith in late February 2001, together with his conversation with Smith in 1998 when the trust was created, established that it was Smith's intent that the policy proceeds go to the trust. The court then determined that the

> change in beneficiary did not have the effect of diminishing or reducing Smith's property or estate in any way. Smith still owned the life insurance policy through the Trust, which was revocable by him [Smith] at any time during his lifetime. . . . Thus . . . there was no gratuitous transfer of Smith's property from his control, no benefit to the attorney in fact,

and there is evidence of the clear intent of Thomas A. Smith that the change in beneficiary should occur.

The court then granted the motion for summary judgment filed by Smith's daughters and Behrens, and overruled the motion filed by the Gerdeses. The Gerdeses appeal.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Lalley v. City of Omaha*, 266 Neb. 893, 670 N.W.2d 327 (2003); *Dean v. Yahnke*, 266 Neb. 820, 670 N.W.2d 28 (2003). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Lalley, supra.*

## ASSIGNMENTS OF ERROR

The Gerdeses assign, restated and renumbered, that the district court erred in determining that (1) the durable power of attorney authorized Behrens to change the policy beneficiary, (2) Smith had expressed a clear intent to change the policy beneficiary, (3) Behrens did not make a gratuitous transfer because he did not profit from the beneficiary change, and (4) the trust is the beneficiary of the policy.

## ANALYSIS

Despite their four assignments of error, the Gerdeses make only one argument in their brief: Absent an express provision in a durable general power of attorney, an agent may not utilize his or her position to make a substantially gratuitous transfer of insurance proceeds either to himself or for a third party's personal benefit. In their brief, the Gerdeses acknowledge that the "Durable General Power of Attorney . . . purports to grant plenary power to defendant Behrens to act on behalf of Thomas A. Smith in the event of his disability." Brief for appellants at 4. The Gerdeses, however, contend that absent an express provision

authorizing Behrens to effect a gratuitous transfer, the plenary power is ineffective.

Smith's daughters and Behrens contend that under these facts, changing the beneficiary of an insurance policy is not a gratuitous transfer. They argue that the power to change the beneficiary was given by the durable general power of attorney and that the evidence is uncontroverted that Smith instructed Behrens to make the change and that such change resulted in no benefit to Behrens.

A power of attorney authorizes another to act as one's agent. *Crosby v. Luehrs*, 266 Neb. 827, 669 N.W.2d 635 (2003). An agent holding a power of attorney is termed an "attorney in fact" as distinguished from an attorney at law. *Id.* Under a durable power of attorney, the authority of an attorney in fact survives the principal's subsequent disability or incapacity. Neb. Rev. Stat. § 30-2665 (Reissue 1995).

Neb. Rev. Stat. § 30-2666 (Reissue 1995) provides:

All acts done by an attorney in fact pursuant to a durable power of attorney during any period of disability or incapacity of the principal have the same effect and inure to the benefit of and bind the principal and his or her successors in interest as if the principal were competent and not disabled.

The district court found that Behrens' uncontroverted testimony established Smith's disability for purposes of the durable power of attorney. Such finding is not assigned as error by the Gerdeses. We therefore focus our analysis on whether Behrens' act of changing the beneficiary constituted a gratuitous transfer to himself or a third party and, if so, whether the durable general power of attorney expressly authorized such act.

An agency is a fiduciary relationship resulting from one person's manifested consent that another may act on behalf and subject to the control of the person manifesting such consent and, further, resulting from another's consent to so act. *Crosby, supra.* An agent and principal are in a fiduciary relationship such that the agent has an obligation to refrain from doing any harmful act to the principal, to act solely for the principal's benefit in all matters connected with the agency, and to adhere faithfully to the instructions of the principal, even at the expense of the agent's own interest. *Id.* Absent express intention, an agent

may not utilize his or her position for the agent's or a third party's benefit in a substantially gratuitous transfer. *Id.*

The Gerdeses rely on a number of gratuitous transfer cases previously decided by this court. Some of the cases involved the transfer of the principal's money into accounts which directly or indirectly benefited the agent. See, *Crosby, supra* (attorney in fact transferred principals' funds from certificate of deposit account with named payable-on-death beneficiary, thereby eliminating beneficiary and indirectly benefiting attorney in fact as devisee under principal's will); *Vejraska v. Pumphrey*, 241 Neb. 321, 488 N.W.2d 514 (1992) (attorney in fact deposited principal's $5,000 inheritance into certificate of deposit account in both principal's and attorney in fact's name based on purported authorization of gift); *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989) (attorney in fact transferred funds from principal's certificates of deposit to accounts in both principal's name and attorney in fact's name and into accounts solely in attorney in fact's name based on principal's purported oral authorization).

Other cases relied upon by the Gerdeses involve the purported oral authorization to convey the principal's real property or make gifts from the principal's money assets to the attorney in fact and close family members. See, *Townsend v. U.S.*, 889 F. Supp. 369 (D. Neb. 1995) (relying on Nebraska law that gift giving is not permitted absent express authorization to determine that checks written on principal's account to attorney in fact and other primarily close family members were revocable transfers for purposes of federal estate taxes); *In re Conservatorship of Anderson*, 262 Neb. 51, 628 N.W.2d 233 (2001) (holding that appointment of conservator was warranted when attorneys in fact made money gifts to themselves and their children out of principal's estate purportedly authorized by principal's gifting program to avoid federal taxes but not expressed in the power of attorney); *Cheloha v. Cheloha*, 255 Neb. 32, 582 N.W.2d 291 (1998) (attorney in fact compensated himself for services based on his assertion of oral contract with principal and made gifts to his family members based on principal's purported oral authorization); *Mischke v. Mischke*, 247 Neb. 752, 530 N.W.2d 235 (1995) (attorney in fact conveyed his brother's property to himself and two other brothers while principal was in coma).

In all of these cases, we have held that the principal's purported oral authorization was ineffective as proof of the principal's intent to make a substantially gratuitous transfer. See, e.g., *Fletcher, supra.* This rule was enunciated out of concern for potential abuse and fraud with durable powers of attorney and has been limited in application to cases in which the attorney in fact, or someone in relationship to the attorney in fact, stood to benefit at the principal's expense.

■ However, the cases upon which the Gerdeses rely are distinguishable because the Gerdeses do not allege that Behrens' action was fraudulent and the uncontroverted evidence in the record establishes that neither Behrens nor any third party having any relationship with Behrens benefited from changing the beneficiary to Smith's trust. Furthermore, under the terms of the First Colony policy, Smith had the right to change his beneficiary designation at any time, and the Gerdeses therefore had no vested interest as beneficiaries. See, Neb. Rev. Stat. § 44-370 (Reissue 1998) (providing policyholders shall have right to change beneficiary with consent of insurer unless appointment is irrevocable); *Goodrich v. Equitable Life Assurance Society,* 111 Neb. 616, 197 N.W. 380 (1924) (when owner reserves right to change beneficiary, beneficiary has no vested interest in policy proceeds that would prevent change before owner's death). Since neither Behrens nor any third party having any relationship with Behrens benefited from changing the beneficiary, Smith's oral authorization was properly considered by the district court as evidence of Smith's intent. The Gerdeses made no objection to Behrens' testimony that Smith intended to have all his assets go to his trust, nor did they offer any evidence to refute such testimony. Viewing this record in the light most favorable to the Gerdeses, we determine that the change of beneficiary was not a gratuitous transfer.

## CONCLUSION

We conclude the trial court did not err in determining that the change of beneficiary was not a gratuitous transfer and that the trust is entitled to the policy proceeds.

AFFIRMED.

McCORMACK, J., not participating.