

# In the Missouri Court of Appeals
## Eastern District

DIVISION THREE

| | | |
|---|---|---|
| FIRST COMMUNITY CREDIT UNION | ) | |
| | ) | No. ED112630 |
| v. | ) | |
| | ) | |
| SAMUEL ROWLEY, SHERYL A. ROWLEY, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| | ) | Cause No. 2211-CC00814 |
| Appellants, | ) | |
| | ) | Honorable Deborah J. Alessi |
| and | ) | |
| | ) | |
| ARCHDIOCESE OF ST. LOUIS, | ) | |
| | ) | |
| Respondent. | ) | Filed: February 25, 2025 |

Introduction

Samuel Rowley and Sheryl Rowley (collectively, the Rowleys) appeal the trial court's summary judgment determining that a durable power of attorney (DPOA) executed by Thomas L. Nicastro (Nicastro) did not explicitly authorize the Rowleys to designate themselves as payable-on-death (POD) beneficiaries of Nicastro's financial accounts held at First Community Credit Union (First Community). Because DPOAs are strictly construed to prevent self-dealing by a fiduciary, and given the particular language of the DPOA here lacking any mention of Nicastro's bank accounts or explicitly authorizing the

Rowleys to change the POD beneficiary designations of such accounts to themselves, we affirm.

Background

Nicastro died on May 7, 2022. At the time of his death, he held four financial accounts at First Community (the Accounts), with balances totaling $256,530.58. Nearly a year prior to his death, on July 28, 2021, Nicastro had designated the Archdiocese of St. Louis (Archdiocese) as the sole POD beneficiary of the Accounts.

Two days prior to Nicastro's death, on May 5, 2022, Sheryl Rowley presented a change-of-beneficiary form to First Community to designate herself and her husband, Samuel Rowley, as the POD beneficiaries of the Accounts. She also presented the DPOA at issue here, which had been executed the previous day, May 4, 2022, and purported to appoint the Rowleys as Nicastro's agents, or attorneys in fact. The DPOA contained a provision authorizing the Rowleys to change beneficiary designations, as well as the following: "My Agents, Sheryl A. Rowley and Samuel Rowley, may use my property, to benefit them, the Agents." First Community denied the change of beneficiary, uncertain that this language entitled the Rowleys to change the beneficiary designation on the Accounts to themselves.

First Community filed an interpleader action in the trial court on September 6, 2022, naming the Rowleys and the Archdiocese as defendants and asking the court to determine the rightful ownership of the proceeds of the Accounts. First Community deposited the balance of the Accounts into the court's registry and was subsequently dismissed from the cause of action.

The Archdiocese moved for summary judgment, arguing that the DPOA failed to expressly authorize the Rowleys to change the POD beneficiaries on the Accounts, and as such the Rowleys are prohibited from doing so under Missouri's Durable Power of Attorney Act, Section 404.700, *et seq.*[1]  The trial court agreed and granted summary judgment in favor of the Archdiocese, ordering the entirety of the proceeds within the court's registry to be paid to the Archdiocese.  This appeal follows.

Discussion

The Rowleys raise one point on appeal, arguing that the trial court erred in granting summary judgment in favor of the Archdiocese because the DPOA granted the Rowleys the power to change beneficiary designations and to use Nicastro's property for their benefit, thus it permitted the Rowleys to designate themselves as POD beneficiaries of the Accounts.  We address the Rowleys' point on appeal after considering a threshold matter raised by the Archdiocese.

The Archdiocese filed a motion to strike the Rowleys' brief and dismiss the appeal, or in the alternative, to strike portions of the legal file submitted by the Rowleys.  Regarding the Rowleys' brief, the Archdiocese argues in part that the Rowleys failed to recite the material facts established by the summary judgment record, and as such, violated Rule 84.04(c)'s briefing requirements.  The Rowleys' statement of facts indeed does not fully identify the material facts.  Further, the brief impermissibly recites facts that were outside the summary judgment record, both because the trial court held as a matter of law that extrinsic evidence surrounding the DPOA was not permitted, and because the trial court struck the Rowleys' affidavits containing such facts because they were not properly

---

[1] All statutory references are to RSMo. Supp. 2022, unless otherwise indicated.

3

brought into the summary judgment record under Rule 74.04. While such deficiencies render the Rowleys' brief non-compliant with Rule 84.04, we may choose to review such briefs *ex gratia* in favor of our preference for decisions on the merits. See Bracely-Mosely v. Hunter Engineering Co., 662 S.W.3d 806, 811 (Mo. App. E.D. 2023). We do so here because the briefs and record leave us with sufficient facts to dispose of the case without advocating for either party. See id. To the extent the Archdiocese raises additional issues with the Rowleys' brief, we find them to be either without merit or without significant impact on our review of the case.

The Archdiocese alternatively requests that we strike Documents 34-48 from the Rowleys' legal file because such documents are not part of the underlying case we address in this appeal, but rather relate to a similar case regarding Nicastro's accounts held at Vantage Credit Union (Vantage case). The Rowleys argue the Vantage case was consolidated with the present case in the trial court, however, though the trial court granted the request to consolidate, it is clear from the trial dockets in both cases that the two were not actually consolidated. In fact, an appeal of the trial court's separate disposition of the Vantage case is currently pending in this Court, and as any documents related to that case are not relevant to the present appeal, we grant the Archdiocese's motion to strike Documents 34-48 from the legal file. To the extent the Rowleys request resolution of the Vantage case in the present case, we decline to do so.

Standard of Review

Turning to the merits of the Rowleys' point on appeal, our review of summary judgment is *de novo*. MacColl v. Mo. State Hwy. Patrol, 665 S.W.3d 290, 294 (Mo. banc 2023) (quoting Green v. Fotoohighiam, 606 S.W.3d 113, 115-16 (Mo. banc 2020)). We

apply the same criteria as the trial court, finding summary judgment proper only where the moving party establishes there is no genuine issue as to the material facts and the moving party is entitled to judgment as a matter of law.  Id.  We view the record in the light most favorable to the party against whom summary judgment was entered, but we accept as true the facts in support of the motion for summary judgment unless contradicted by the non-moving party's response to the summary judgment motion.  Id.

<u>Point I</u>

The Rowleys argue the DPOA authorized the Rowleys to designate themselves POD beneficiaries on the Accounts, thus the trial court erred in granting summary judgment in favor of the Archdiocese.  We disagree.

The parties agree there is no genuine dispute as to the material facts.  This case centers on interpretation of the DPOA at issue here, guided by Missouri's Durable Power of Attorney Act and relevant case law.

The Durable Power of Attorney Act establishes that the relationship between an attorney in fact and a principal is a fiduciary relationship, making clear that any ability for the attorney in fact to benefit personally from the principal's assets must be expressly authorized by the DPOA.  Section 404.714.1 assigns the following fiduciary obligations to an attorney in fact:

> to avoid self-dealing and conflicts of interest, as in the case of a trustee with respect to the trustee's beneficiary or beneficiaries; and *in the absence of explicit authorization*, the attorney in fact shall exercise a high degree of care in maintaining, without modification, any estate plan which the principal may have in place, including . . . arrangements made by the principal for disposition of assets at death through beneficiary designations . . . .

5

(emphasis added). Thus, attorneys in fact have a fiduciary duty to preserve the principal's beneficiary designations unless otherwise explicitly authorized. Similarly, Section 404.710.6(6) authorizes an attorney in fact to do the following, only "if the actions are *expressly enumerated and authorized in the power of attorney*" (emphasis added):

> To designate or change the designation of beneficiaries to receive any property, benefit or contract right on the principal's death[.]

The General Assembly included such language to protect "principals, who by the very circumstances that spawned the granting of [DPOAs], are least likely to be able to protect themselves from self-dealing by unscrupulous fiduciaries." Estate of Herbert v. Herbert, 152 S.W.3d 340, 353 (Mo. App. W.D. 2004).

The issue here is whether the language of the DPOA contains such express enumeration and authorization for the Rowleys, as attorneys in fact, not only to change the beneficiary designation on the Accounts, but to use any such authority to designate *themselves* the beneficiaries of the Accounts. We strictly construe the language of the DPOA, giving no broader authority to the attorney in fact than is granted by its plain and unambiguous terms. McKean, 675 S.W.3d at 753 (citing Haines v. Branson Cabin Rentals, LLC, 635 S.W.3d 172, 174 (Mo. App. S.D. 2021); Randall v. Randall, 497 S.W.3d 850, 856 (Mo. App. W.D. 2016)).

Initially, we note the Rowleys attempted to introduce evidence that they were following the oral instructions of Nicastro when they sought to change the beneficiary designation. However, as the trial court noted, it is settled Missouri law that oral instructions are irrelevant to the determination of any express authorization contained in the DPOA, precisely because the only person who could refute any such instructions is

deceased. See Estate of McKean by and through Egloff v. Baker, 675 S.W.3d 745, 753 (Mo. App. S.D. 2023) (citing In re Estate of Lambur, 397 S.W.3d 54, 64 (Mo. App. S.D. 2013)) (finding daughter's and son's transfers of mother's assets to themselves, even if done in good faith, were nevertheless without express authorization under DPOA; there is no "good faith" exception to prohibition of self-dealing under Missouri law (discussing Minter v. Minter, 530 S.W.3d 534 (Mo. App. W.D. 2017)).

Thus, we are limited to the language of the DPOA here, which begins with a section entitled "Grant of General Authority." This section contains several categories of authority, and Nicastro indicated by initialing that he wished to grant authority in all matters listed. One of the matters involves "Banking and other financial institution transactions," but of the actions listed therein, none have to do with designating or changing the beneficiaries of any financial accounts.[2]

The next section is entitled "Grant of Specific Authority (Optional)." It states the agent "MAY NOT do any of the following . . . UNLESS [the principal has] INITIALED the specific authority listed below." Nicastro initialed next to each of the following:

> Make a gift.
> Create or change rights of survivorship.
> Create or change a beneficiary designation.

---

[2] That section reads as follows:

> **Banking and other financial institution transactions.** To make, receive, sign, endorse, execute, acknowledge, deliver, and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts, and deposit instruments relating to accounts or deposits in, or certificates of deposits of banks, savings and loans, credit unions, or other institutions or associations. To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my Agent. To borrow from time to time such sums of money as my Agent may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part. To have free access at any time or times to any safe deposit box or vault to which I might have access.

7

While this language clearly enumerates authority to change a beneficiary designation, it does not specify that the agent may designate him- or herself as the beneficiary or recipient of any gift or right of survivorship. This Court has previously ruled similar general language authorizing an agent to change a beneficiary designation was insufficient to authorize the attorney in fact, who was the daughter of the principal, to designate herself the transfer-on-death beneficiary of her mother's assets. Antrim v. Wolken, 228 S.W.3d 50, 54 (Mo. App. 2007). Therefore, while this section permits the Rowleys to change a beneficiary designation, it is not sufficiently specific to overcome the strong prohibition against self-dealing in the Durable Power of Attorney Act and permit the Rowleys to designate themselves the POD beneficiaries of the accounts.

The DPOA further contains a "Limitation on Agent's Authority," stating, "An agent that is not my ancestor, spouse, or descendant MAY NOT use my property to benefit the Agent . . . unless I have included that authority in the Special Instructions." The next section, "Special Instructions (Optional)," contains a handwritten sentence: "My Agents, Sheryl A. Rowley and Samuel Rowley, may use my property to benefit them, the Agents." The Rowleys argue this section expressly permits self-dealing, and specifically, the ability to designate themselves the beneficiaries of Nicastro's bank accounts.

However, the statement at issue is broad and non-specific, allowing the Rowleys to "use [Nicastro's] property to benefit them." It neither defines what particular "uses" are permitted, nor does it specify the particular "property" to which it refers. "Well established rules of interpretation of powers of attorney dictate that broad, all-encompassing grants of power to the agent must be discounted." Mercantile Trust Co., N.A. v. Harper, 622 S.W.2d 345, 349 (Mo. App. E.D. 1981). Moreover, we do not readily see that the authorization for

8

the Rowleys to use Nicastro's property unambiguously includes designating themselves beneficiaries of Nicastro's bank accounts. If the latter is what Nicastro intended, he could have noted as much in the special instructions, especially if, as the Rowleys claim, he employed that degree of specificity orally. The vague grant of power on the page does not convince us Nicastro in fact intended the Rowleys to name themselves the POD beneficiaries of the Accounts. Strictly construing these words, as we must in light of the foregoing authority and the high potential for abuse, we find no error in the trial court's conclusion that the DPOA here fails to expressly authorize the Rowleys to designate themselves the POD beneficiaries of the accounts. Point denied.

Conclusion

We affirm the trial court's summary judgment in favor of the Archdiocese.

_____
Gary M. Gaertner, Jr., J.

Philip M. Hess, P.J., and
Renee D. Hardin-Tammons, J., concur.